UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MIKE STURSMA, Individually and On Behalf of All Others Similarly Situated, | : : : : : | Case No._____ |
| Plaintiff, | : : | |
| v. | : : : | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CASTLE BRANDS INC., MARK ANDREWS III, JOHN F. BEAUDETTE, HENRY C. BEINSTEIN, PHILLIP FROST, RICHARD M. KRASNO, RICHARD J. LAMPEN, STEVEN D. RUBIN, and MARK ZEITCHICK, | : : : : : : : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

Plaintiff Mike Stursma ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action against Castle Brands Inc. ("Castle Brands" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to

which Castle Brands will be acquired by Austin, Nichols & Co., Inc.[1] ("Austin Nichols") through its wholly-owned subsidiary Rook Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.    On August 28, 2019, Castle Brands and Pernod issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Castle Brands to Pernod.  Under the terms of the Merger Agreement, Pernod will acquire all outstanding shares of Castle Brands for $1.27 in cash per share of Castle Brands' common stock (the "Offer Price").  Pursuant to the Merger Agreement, Austin Nichols, through Merger Sub, commenced the Tender Offer on September 11, 2019.  The Tender Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of October 8, 2019.  The Proposed Transaction is valued at approximately $223 million.

3.    On September 11, 2019, Castle Brands filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.   The Recommendation Statement, which recommends that Castle Brands stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Castle Brands management's projections, utilized by the Company's financial advisors, Perella Weinberg Partners L.P. ("Perella") and Houlihan Lokey Capital, Inc. ("Houlihan") in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Perella and Houlihan; (iii) the background leading to the Proposed Transaction; and (iv) potential conflicts of interest faced by the Company's financial advisors, Perella and Houlihan.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Castle Brands stockholders need such information in order to make a fully

---

[1] Austin Nichols is the United States holding company of Pernod Ricard S.A. ("Pernod").

informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

4.      In short, the Proposed Transaction will unlawfully divest Castle Brands' public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Castle Brands is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Castle Brands.

9.     Defendant Castle Brands is a Florida corporation with its principal executive offices located at 122 East 42nd Street, Suite 5000, New York, New York 10168.  Castle Brands is a developer and international marketer of premium and super-premium brands including: Jefferson's, Jefferson's Presidential Select, Jefferson's Reserve, Jefferson's Ocean Aged at Sea Bourbon, Jefferson's Wine Finish Collection and Jefferson's Wood Experiments, Goslings Rums, Goslings Stormy Ginger Beer, Knappogue Castle Whiskey, Clontarf Irish Whiskey, Pallini Limoncello, Boru Vodka, Brady's Irish Cream, The Arran Malt Single Malt Scotch Whisky, The Robert Burns Scotch Whisky and Machrie Moor Scotch Whisky.  Castle Brands' common stock is traded on the NYSE American under the ticker symbol "ROX."

10.     Defendant Mark Andrews III ("Andrews") has served as Chairman of the Board since December 2003 and founded Castle Brands' predecessor company, Great Spirits Company LLC, in 1998 and served as its Chairman, President and Chief Executive Officer ("CEO") from its inception until December 2003.

11.     Defendant John F. Beaudette ("Beaudette") has been a director of the Company since January 2004.

12.     Defendant Henry C. Beinstein ("Beinstein") has been a director of the Company since January 2009.

13.     Defendant Phillip Frost ("Frost") has been a director of the Company since October 2008.

14.     Defendant Richard M. Krasno ("Krasno") has been a director of the Company since March 2015.

15.     Defendant Richard J. Lampen ("Lampen") has served as the Company's CEO and a director since October 2008.

16.     Defendant Steven D. Rubin (Rubin") has been a director of the Company since January 2009.

17.     Defendant Mark Zeitchick ("Zeitchick") has been a director of the Company since March 2014.

18.     Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Pernod is the number two worldwide producer of wines and spirits with consolidated sales of €8,987 million in FY18.  Created in 1975 by the merger of Ricard and Pernod, Pernod, which owns 16 of the Top 100 Spirits Brands, holds one of the most prestigious and comprehensive brand portfolios in the industry, including: Absolut Vodka, Ricard pastis, Ballantine's, Chivas Regal, Royal Salute, and The Glenlivet Scotch whiskies, Jameson Irish whiskey, Martell cognac, Havana Club rum, Beefeater gin, Malibu liqueur, Mumm and Perrier-Jouët champagnes, as well Jacob's Creek, Brancott Estate, Campo Viejo, and Kenwood wines. Pernod's common stock is traded on the Euronext under the ticker symbol "RI."

20.     Austin Nichols is a Delaware corporation and affiliate of Pernod.

21.     Merger Sub is a Florida corporation and wholly owned subsidiary of Austin Nichols.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Castle Brands common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of the close of business on September 9, 2019, there were 170,372,173 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Castle Brands or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

25.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

26.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Company Background

29.     Castle Brands develops and markets premium and super premium brands in the following beverage alcohol categories: rum, whiskey, liqueurs and vodka.  The Company also develops and markets related non-alcoholic beverage products, including Goslings Stormy Ginger Beer.  Castle Brands distributes its products in all 50 U.S. states and the District of Columbia and in thirteen primary international markets, including Ireland, Great Britain, Northern Ireland, Germany, Canada, France, Finland, Norway, Sweden, Holland, and the Duty Free markets.  The Company also has an 80.1% ownership interest in Gosling-Castle Partners Inc. ("GCP"), a strategic export venture with the Goslings family which owns the remaining 19.9% interest.

30.     On August 9, 2019, the Company announced its first quarter 2019 financial results, including the following highlights:

- Sales of Jefferson's Bourbon were 22,250 cases in the first quarter of fiscal

2020, an increase of 4.8% over the comparable prior-year period and trailing twelve month (TTM) sales of Jefferson's were 89,500 cases, an increase of 14.1% over the comparable prior period.

- In the first quarter of fiscal 2020, the Company purchased $2.1 million of aged and new-fill bourbon to support continued rapid growth of Jefferson's Bourbon. Castle's bourbon inventory is now approximately 35,000 barrels, which is enough to make over 800,000 cases of Jefferson's.

- U.S. sales of Goslings Stormy Ginger Beer were 467,000 cases in the first quarter of fiscal 2020, an increase of 4.9% over the comparable prior-year period and TTM sales of Goslings Stormy Ginger Beer were 1,938,000 cases, an increase of 6.9% over the comparable prior period.

- In July 2019, the Company announced that it had substantially expanded and extended its Revolving Credit Facility and reduced the weighted average cost of its debt by approximately 350 basis points. The increased credit facility allowed the Company to retire its $20 million 11% Subordinated Notes.

31.     Defendant Lampen commented on the first quarter's results, stating:

The balance sheet recapitalization and expansion of our revolving credit facility with our lender in July was a major turning point for Castle Brands. It recognizes the value of our bourbon inventory, substantially lowers our overall interest expense, and provides significantly increased liquidity and financial flexibility.

32.     John Glover, Castle Brands' Executive Vice President and Chief Operating Officer

commented on the results, stating:

As an indication of Jefferson's growing popularity, our next voyage of Wheated Jefferson's Ocean Aged at Sea has been fully allocated while still at sea. We will use our aged bourbon reserves to support increased sales of Jefferson's and its more expensive brand extensions, such as Jefferson's Ocean Aged at Sea and wine finishes. We also continue to add innovative expressions to drive sales and enhance the Jefferson's brand. Our goal for fiscal 2020 is to sell 100,000 cases of Jefferson's, which is one of the top five selling premium small batch bourbons. Moreover, Jefferson's is the only leading small batch brand to command an average price greater than $50 per bottle and the only leading small batch bourbon not owned by a major spirits company.

The growing popularity of ginger beer cocktails has been an important growth driver for Goslings Stormy Ginger Beer. It is now the best-selling premium ginger beer in America. The continued success of Goslings Stormy Ginger Beer gives us the opportunity to expand the line and add flavor extensions and other mixers, and to expand distribution and placements on retail shelves. Goslings Stormy Ginger

Beer is now entering its third year in the mixer section of all of the approximately 4,500 Walmart stores in the United States and is a leader in that section.

33.     Additionally, Alfred J. Small, Castle Brands' Senior Vice President and Chief Financial Officer commented on the future outlook of the Company, stating:

> In addition to continued sales growth and containment of expenses, we expect that three other factors will contribute to improved financial performance in fiscal 2020. First, our new debt structure should result in approximately $1.5 million in interest savings. Second, we expect to begin using our bourbon new-fill, which has matured, and which should substantially reduce our COGS and increase Jefferson's brand contribution. Third, we expect to benefit from reduced federal excise tax expense by over $1 million because of the recently enacted Craft Beverage Modernization and Tax Reform Act.

**The Proposed Transaction**

34.     On August 28, 2019, Castle Brands and Pernod issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> PARIS and NEW YORK – August 28, 2019 – Pernod Ricard (Euronext Ticker RI; ISIN Code: FR0000120693) and Castle Brands Inc. (NYSE American: ROX), today announced that they have entered into a definitive agreement under which Pernod Ricard, through a subsidiary, will acquire all of the outstanding common stock of Castle Brands for $1.27 per share in cash, or approximately $223 million, plus the assumption of debt, through a cash tender offer followed by a merger.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Castle Brands Board of Directors, Castle Brands shareholders will receive $1.27 in cash for each outstanding share of Castle Brands common stock they own, representing a 92% premium to Castle Brands' closing share price on August 27, 2019, and a 109% premium to the 30-day volume weighted average share price through such date.
>
> Alexandre Ricard, Chairman and Chief Executive Officer of Pernod Ricard, stated, "Through this acquisition we welcome this great brand portfolio, in particular, Jefferson's bourbon whiskey, to the Pernod Ricard family. Bourbon is a key category in the US which is our single most important market. This deal aligns well with our consumer-centric strategy to offer our consumers the broadest line-up of high-quality premium brands. As with our American whiskies Smooth Ambler, Rabbit Hole and TX, we would provide Jefferson's a strong route to market and secure its long-term development, while remaining true to its authentic and innovative character."

"We are very pleased to reach an agreement with Pernod Ricard, which is the result of months of planning and deliberation by our Board of Directors," said Richard J. Lampen, President and Chief Executive Officer of Castle Brands. "We are confident that this transaction, upon closing, will deliver immediate and substantial cash value to our shareholders."

The merger agreement provides for a cash tender offer to acquire all outstanding shares of Castle Brands to be launched shortly. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of Castle Brands' outstanding shares, early termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Once the tender offer is successfully completed, Pernod Ricard will acquire all shares not acquired in the tender offer through a second-step merger in which the holders of the outstanding shares of Castle Brands common stock not tendered in the offer will receive the same per share price paid in the tender offer, in cash. The transaction is expected to close in the fourth quarter of 2019.

### Insiders' Interests in the Proposed Transaction

35.     Castle Brands insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Castle Brands.

36.     Specifically, Company insiders stand to reap substantial financial benefits for securing the deal with Pernod.  The following table summarizes the cash payments the Company's insiders stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| | Cash Consideration for Stock Options and Restricted Stock Awards(1)($) |
| --- | --- |
| Phillip Frost and related entities | 45,775 |
| Mark E. Andrews, III | 1,400,500 |
| John Beaudette | 104,975 |
| Henry C. Beinstein | 45,775 |
| John S. Glover | 1,463,725 |
| Dr. Richard M. Krasno | 41,775 |
| Richard J. Lampen | 2,028,000 |
| Alejandra Peña | 385,063 |
| Steven D. Rubin | 104,975 |
| Alfred J. Small | 626,725 |

10

| | |
|---|---:|
| T. Kelley Spillane | 616,108 |
| Mark Zeitchick | 61,775 |
| **All directors and officers as a group** | 6,925,171 |

37.     Moreover, if they are terminated in connection with the Proposed Transaction, Castle Brands' named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Executive Officer | Severance Payment ($)(1) | Value of Health Benefits ($)(2) | Benefit of Acceleration for Vesting of Stock Options and Restricted Stock Awards ($)(3) | Total($) |
|---|---:|---:|---:|---:|
| Richard J. Lampen | 515,000 | — | 55,500 | 570,500 |
| Alfred J. Small | 815,474 | 62,928 | 275,675 | 1,154,077 |
| John S. Glover | 1,020,608 | 44,160 | 401,538 | 1,466,306 |
| T. Kelley Spillane | 886,796 | 62,928 | 275,675 | 1,225,399 |
| Alejandra Peña | 298,850 | 26,448 | 230,038 | 555,336 |

## The Recommendation Statement Contains Numerous Material Misstatements or Omissions

38.     The defendants filed the materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Castle Brands' stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal.

39.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Castle Brands management's projections, utilized by the Company's financial advisors, Perella and Houlihan, in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Perella and Houlihan; (iii) the background leading to the Proposed Transaction; and (iv) potential conflicts of interest faced by the Company's financial advisors, Perella and Houlihan. Accordingly, Castle

Brands' stockholders are being asked to tender their shares in connection with the Tender Offer or seek appraisal without all material information at their disposal.

***Material Omissions Concerning Castle Brands' Financial Projections***

40.     The Recommendation Statement fails to disclose material information relating to Castle Brands management's financial projections.

41.     For example, in connection with Perella's *Discounted Cash Flow Analysis*, the Recommendation Statement sets forth:

> Perella Weinberg conducted a discounted cash flow analysis for the Company based on the Company Forecasts by:
>
> - calculating, in each case, the present value as of June 30, 2019 of the estimated standalone unlevered free cash flows (***calculated as EBITDA burdened by stock-based compensation, less taxes, less capital expenditures, and adjusting for changes in net working capital***) that the Company is projected to generate for the final nine months of fiscal year 2020 and fiscal years 2021 and 2022, based on the Company Forecasts, using discount rates ranging from 10.0% to 13.0% based on estimates of the weighted average cost of capital of the Company derived using the capital asset pricing model, and
>
> . . .
>
> From the range of implied enterprise values calculated in the discounted cash flow analysis, Perella Weinberg derived the range of implied equity values for the Company. In calculating the range of implied equity values, ***Perella Weinberg included the net present value of the NOLs (which value was approximately $6 million based on an adjusted tax rate of 21%), subtracted debt and the value of the 19.9% non-controlling interest in GCP, and added cash, cash equivalents, including restricted cash, and investments in each case as provided by management of the Company.*** Perella Weinberg then calculated the implied equity value per share range by dividing the implied equity value range by the fully diluted shares (using the treasury method) of the Company provided by management of the Company, resulting in an implied equity value per share range of approximately $1.10 to $1.60 per share of Common Stock (rounded to the nearest $0.05). Perella Weinberg compared this range to the Merger Consideration to be received by the holders of Common Stock pursuant to the Merger Agreement.

Recommendation Statement at 40 (emphasis added).

42.     Similarly, in connection with Houlihan's *Discounted Cash Flow Analysis*, the Recommendation Statement states:

> Houlihan Lokey performed a discounted cash flow analysis of the Company by calculating the estimated net present value of the projected unlevered, after-tax free cash flows of the Company based on the Company Forecasts. Houlihan Lokey, based on Houlihan Lokey's professional judgment, applied a range of terminal value multiples of 14.0x to 20.0x to the Company's FY 2022E EBITDA in the Company Forecasts and discount rates ranging from 11.50% to 14.50%, which resulted from a weighted average cost of capital calculation (a measure of the weighted average expected return on a given company's equity and debt securities based on their relative proportions in such company's capital structure) to derive an implied enterprise value reference range. To calculate the implied equity value reference range from the implied enterprise value reference range, Houlihan Lokey added **cash and cash equivalents and restricted cash, equity method investments, the present value of federal tax savings from the NOLs, subtracted debt and non-controlling interests, in each case as provided by management of the Company**. Houlihan Lokey then calculated the implied equity value per share range by dividing the implied equity value range by the fully diluted shares (using the treasury method) of the Company provided by management of the Company, resulting in an implied equity value per share range of $1.07 to $1.76 per share of Common Stock, as compared to the Merger Consideration to be received by the holders of Common Stock in the Transaction pursuant to the Merger Agreement.

*Id*. at 47(emphasis added).

43.     The Recommendation Statement fails, however, to disclose (i) EBITDA burdened by stock-based compensation, less taxes, less capital expenditures, and adjusting for changes in net working capital that the Company is projected to generate for the final nine months of fiscal year 2020 and fiscal years 2021 and 2022; (ii) the Company's net operating loss carryforwards ("NOLs") over the projection period; (iii) the Company's cash and cash equivalents and restricted cash; (iv) equity method investments; and (v) debt and non-controlling interests.

44.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

45.     The omission of this information renders the statements in the "Certain Prospective Financial Information (Unaudited)" and "Opinions of the Company's Financial Advisors" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Perella's and Houlihan's Financial Analyses***

46.     The Recommendation Statement describes Perella's and Houlihan's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Perella's and Houlihan's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Castle Brands' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Perella's and Houlihan's fairness opinions in determining whether to tender their shares in connection with the Tender Offer or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Castle Brands' stockholders.

47.     With respect to Perella's *Selected Publicly Traded Companies Analysis*, *Selected Transactions Analysis* and *Sum-of-the-Parts Analysis*, the Recommendation Statement fails to disclose: (i) debt; (ii) the value of the 19.9% non-controlling interest in GCP; (iii) cash; (iv) cash equivalents, including restricted cash; and (v) investments, in each case as provided by management of the Company.

48.     With respect to Perella's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the estimated standalone unlevered free cash flows (calculated as EBITDA burdened by stock-based compensation, less taxes, less capital expenditures, and adjusting for changes in net working capital) that the Company is projected to generate for the

final nine months of fiscal year 2020 and fiscal years 2021 and 2022; (ii) quantification of the individual inputs and assumptions underlying the range of discount rates from 10.0% to 13.0%; (iii) debt; (iv) the value of the 19.9% non-controlling interest in GCP; (v) cash; (vi) cash equivalents, including restricted cash; and (vii) investments, in each case as provided by management of the Company.

49.     With respect to Houlihan's *Selected Companies Analysis*, the Recommendation Statement fails to disclose (i) cash and cash equivalents; (ii) restricted cash; (iii) equity method investments; (iv) the present value of federal tax savings from the Company's NOLs; (v) debt; and (vi) non-controlling interests, in each case as provided by management of the Company.

50.     With respect to Houlihan's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the estimated net present value of the projected unlevered, after-tax free cash flows of the Company; (ii) quantification of the individual inputs and assumptions underlying the range of discount rates from 11.5% to 14.5%; (iii) cash; (iv) cash equivalents; (v) restricted cash; (vi) equity method investments; (vii) the present value of federal tax savings from the Company's NOLs; (viii) debt; and (ix) non-controlling interests in each case as provided by management of the Company.

51.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52.     The omission of this information renders the statements in the "Opinions of the Company's Financial Advisors" and "Certain Prospective Financial Information (Unaudited)" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning the Background of the Proposed Transaction**

53.     The Recommendation Statement is materially deficient because it fails to disclose material information relating to the background of the process leading to the Proposed Transaction.

54.     Specifically, in connection with the sale process, the Recommendation Statement sets forth:

> Between April 2017 and September 2017 (and also in June 2018 and June 2019), Perella Weinberg, as previously authorized, also contacted a total of eleven other companies . . . . The Company was contacted by a twelfth company, Company Seven, in June 2019.  Of these twelve other companies, ten signed NDAs with the Company

*Id.* at 16.  The Recommendation Statement fails, however, to disclose whether the non-disclosure agreements ("NDAs") Castle Brands entered into with any of the ten counterparties are still in effect and/or contains a "don't ask, don't waive" ("DADW") standstill provision that is presently precluding each of these counterparties from making a topping bid for the Company.

55.     The disclosure of the terms of any standstill provisions in the NDAs Castle Brands entered into with potential merger partners is crucial to Castle Brands stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

56.     Additionally, the Recommendation Statement fails to disclose whether any of Pernod's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

57.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

58.     The omission of this information renders the statements in the "Background of the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Perella's and Houlihan's Potential Conflicts of Interest***

59.     The Recommendation Statement fails to disclose material information concerning potential conflicts of interest of the Company's financial advisors Perella and Houlihan.

60.     For example, the Recommendation Statement sets forth that "Perella Weinberg and its affiliates are currently providing investment banking services to Parent on matters unrelated to the Transaction for which it expects to receive compensation." *Id*. at 41.  The Recommendation Statement fails, however, to disclose the amount of compensation Perella is expected to receive for these investment banking services.

61.     Additionally, the Recommendation Statement sets forth:

Houlihan Lokey was engaged by the Company to provide an opinion to the Board as to the fairness, from a financial point of view, to the holders of the Common Stock of the Merger Consideration to be received by such holders in the Transaction pursuant to the Merger Agreement. The Company engaged Houlihan Lokey based on Houlihan Lokey's experience and reputation. Houlihan Lokey is regularly engaged to render financial opinions in connection with mergers, acquisitions, divestitures, leveraged buyouts, and for other purposes. Pursuant to its engagement by the Company, Houlihan Lokey became entitled to an aggregate fee of $400,000 for its services, a portion of which became payable upon the execution of Houlihan Lokey's engagement letter and the balance of which became payable upon the delivery of Houlihan Lokey's opinion. No portion of Houlihan Lokey's fee is contingent upon the successful completion of the Transaction. The Company has also agreed to reimburse Houlihan Lokey for certain expenses and will indemnify Houlihan Lokey, its affiliates and certain related parties against certain liabilities and expenses arising out of or relating to Houlihan Lokey's engagement.

In the ordinary course of business, certain of Houlihan Lokey's employees and affiliates, as well as investment funds in which they may have financial interests or

with which they may co-invest, may acquire, hold or sell, long or short positions, or trade, in debt, equity, and other securities and financial instruments (including loans and other obligations) of, or investments in the Company, Parent, or any other party that may be involved in the merger and their respective affiliates or security holders or any currency or commodity that may be involved in the merger.

In December 2018, Houlihan Lokey acted as financial advisor to Ladenburg Thalmann Financial Services Inc. ("Ladenburg") in connection with Ladenburg's repurchase of a substantially majority of the shares held in Ladenburg by Phillip Frost and his affiliates (collectively, the "Frost Group"), then the largest shareholder of Ladenburg and currently the largest shareholder of the Company.

Several members of management and directors of Ladenburg are also members of management and directors of the Company. In connection with bankruptcies, restructurings, distressed situations and similar matters, Houlihan Lokey and certain of its affiliates may have in the past acted, may currently be acting and may in the future act as financial advisor to debtors, creditors, equity holders, trustees, agents and other interested parties (including, without limitation, formal and informal committees or groups of creditors) that may have included or represented and may include or represent, directly or indirectly, or may be or have been adverse to, the Company, Parent, members of the Frost Group other participants in the Transaction or certain of their respective affiliates or security holders, for which advice and services Houlihan Lokey and its affiliates have received and may receive compensation.

*Id*. at 47-48.   The Recommendation Statement fails, however, to disclose: (i) any services performed by Houlihan for the Company,  Austin Nichols or Pernod in the last two years and the fees received for these services; and (ii) the fees received by Houlihan for acting as financial advisor to Ladenburg Thalmann Financial Services Inc. ("Ladenburg") in connection with Ladenburg's repurchase of a substantially majority of the shares held in Ladenburg by defendant Frost and his affiliates, then the largest shareholder of Ladenburg and currently the largest shareholder of the Company.

62.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

63.     The omission of this information rendered the statements in the "Opinions of the Company's Financial Advisors" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

64.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in connection with the Tender Offer or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

65.     Plaintiff repeats all previous allegations as if set forth in full.

66.     Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Castle Brands stockholders to tender their shares in the Tender Offer.

67.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

68.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

69.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

therein to be materially incomplete and therefore misleading.   Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

70.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and other members of the Class, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

71.     Plaintiff repeats all previous allegations as if set forth in full.

72.     Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

73.     Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer or seek appraisal.

74.     As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares or seek appraisal.

### COUNT III

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

75.      Plaintiff repeats all previous allegations as if set forth in full.

76.     The Individual Defendants acted as controlling persons of Castle Brands within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Castle Brands and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction.  They were, thus, directly involved in the making of this document.

79.      In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

80.      By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

81.      Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Castle Brands, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.


Dated:  September 17, 2019                     **WEISSLAW LLP**

                                        By _____
                                           Richard A. Acocelli
                                           1500 Broadway, 16th Floor
                                           New York, New York 10036
                                           Tel: (212) 682-3025
                                           Fax: (212) 682-3010
                                           Email: racocelli@weisslawllp.com

                                           *Attorneys for Plaintiff*